UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN D. BACON and ELAINE BACON, | Case No. 2:11-cv-00107-EJL-CWD |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | |
| COUNTRYWIDE BANK FSB, BANK OF AMERICA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and DOES 1 through 10, inclusive, | |
| Defendants. | |

## REPORT

### INTRODUCTION

Plaintiffs Brian and Elaine Bacon (the "Bacons") filed their complaint on March 17, 2011, against their mortgage company and other named Defendants seeking declaratory relief, quiet title, an accounting, and other relief in an effort to retain their residence located at 8594 West Hamaker Road in Kootenai County, Idaho. Jurisdiction in this Court is based upon diversity, and the Bacons' five state law claims for relief against Defendants are for (1) breach of the covenant of good faith and fair dealing, (2)

intentional or negligent misrepresentation, (3) violation of the Idaho Consumer Protection Statutes, (4) quiet title, and (5) declaratory and injunctive relief. (Compl. Dkt. 1.) On May 27, 2011, Defendants Bank of America, for itself and as successor in interest to Countrywide Bank, and Mortgage Electronic Systems, Inc. ("MERS"), moved to dismiss the claims asserted in the Bacons' complaint under Fed. R. Civil P. 12(b)(6) for failure to state a claim.

The Court requested additional briefing from the parties in light of recent decisions of this Court. (Dkt. 22.) The matter is now fully briefed and ripe for the Court's consideration. Having reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be aided significantly by oral argument, the motion will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d).

## BACKGROUND

The Bacons purchased real property known as 8594 West Hamaker Road in Kootenai County on or about March 24, 2007, (the "Property"), and to do so, they obtained a loan from Countrywide in the amount of $356,250.00 pursuant to a Fixed/Adjustable Rate Note (the "Note"). (Aff. of McConnel Ex. A, Dkt. 7-2.) The Note designates Countrywide as the Lender. The Note informs the Bacons that: "Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (*Id.*) The Note informs the Bacons where to send their monthly payments, and lets them know that the Note

Holder may designate a different payment address. The terms of the Note state that, if the Note Holder does not receive the monthly payments when due, the Bacons will be in default.

Concurrent with execution of the Note, the Bacons pledged the Property as security for repayment of the Note pursuant to a Deed of Trust. (Aff. of McConnel Ex. B, Dkt. 7-3.) The Deed of Trust designated Countrywide as the Lender as well, and Fidelity National Title Insurance Company as Trustee. MERS was identified as "nominee for Lender and Lender's successors and assigns." MERS, and its successors and assigns, was identified as "the beneficiary under this Security Instrument." Pursuant to the terms of the Deed of Trust, the Bacons granted and conveyed to Trustee the power of sale for the Property. The Deed of Trust further provided that

> [T]he Note, or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the Change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.

Under the Deed of Trust, the Lender may invoke the power of sale, and either Lender will execute written notice or cause Trustee to execute written notice of an event of default. Lender could also remove Trustee and appoint a successor trustee. The Deed of Trust was recorded in Kootenai County on March 28, 2008, as instrument number 2151404000.

The Bacons ceased making monthly payments on the Note on September 1, 2009. On December 9, 2009, Countrywide caused to be recorded a notice of Appointment of Successor Trustee appointing Recontrust Company as the successor to Fidelity National Title. (Aff. of Dina Ex. A, Dkt. 15-2.) Recontrust thereafter caused to be recorded a Notice of Default. (Aff. of McConnel Ex. C, Dkt. 7-4.) On the same date, MERS executed and recorded a "Corporation Assignment of Deed of Trust," transferring to BAC Home Loans Servicing, formerly known as Countrywide, all beneficial interest under the Deed of Trust together with the Note, and all rights under the Deed of Trust. (Aff. of Dina Ex. B, Dkt. 15-2.) The Notice of Default stated that BAC Home Loans Servicing, formerly known as Countrywide Home Loans Servicing, as beneficiary under the Deed of Trust, gave notice of default, and that the Beneficiary elected to sell the Property. A second Notice of Default was recorded on February 24, 2010. (*Id.* Ex. D, Dkt. 7-5.)

The Bacons' financial difficulties began in or around 2008, and at that time they contacted Bank of America seeking a modification of the Note. (Compl. 79—80.) However, Bank of America allegedly never intended to nor had the authority to modify the Bacons' loan, because it was simply a "servicer." The Bacons therefore claim they were duped. In other words, the Bacons claim, had they known they would never again be able to negotiate with their lender, they would not have entered into the loan.

The Bacons seek a declaration that Bank of America has no right to foreclose in its own behalf. As and for support of their claim for declaratory relief, the Bacons contend that Bank of America has misrepresented its authority to foreclose, because once their

loan was "securitized" and sold to investors in mortgage backed securities, those individuals or entities actually became the "lenders." Therefore, the Bacons assert they are unaware of who owns the Note. Further, the Bacons contend that the Trust Deed and Note were "intentionally separated by assignment of the Trust Deed without assignment of the Note" during the securitization process, and only the owners of the Note, or the investors, have the power to foreclose.

## DISPOSITION

### 1.    Standards Applicable to a Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent

with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

In a more recent case, the United States Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. "Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005). The United States Court of Appeals for the Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court

should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987).[1] The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## 2.     Breach of the Covenant of Good Faith and Fair Dealing

The Idaho Supreme Court recognizes there is an implied in law covenant of good faith and fair dealing in every contract. *Idaho First Natl. Bank v. Bliss Valley Foods*, 824 P.2d 841, 862 (Idaho 1991). The covenant is breached by "[a]ny action by either party which violates, nullifies or significantly impairs any benefit of the contract," and requires "that the parties perform in good faith the obligations imposed by their agreement." *Id.* at

---

[1] The Court granted the Defendants' two unopposed requests for judicial notice on November 25, 2011. (Dkt. 28, 29.) Therefore, the Court accepts as true all material allegations in the Complaint, and will consider all documents attached to the Complaint and submitted in support of the Motion to Dismiss, as well as reasonable inferences drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

863. However, a breach of this covenant results in contract damages, not tort damages. *Id.* And "[t]he implied covenant of good faith and fair dealing arises only regarding terms agreed to by the parties." *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 698 (Idaho 2009). "There is no basis for claiming implied terms contrary to the express rights contained in the parties' agreement." *Idaho First Nat'l Bank*, 824 P.2d at 863. In other words, the covenant "does not create new duties that are not inherent" in the parties' agreement. *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1080 (Idaho 2010).

The Bacons have not identified any specific term within either the Note or the Trust Deed that Defendants breached by declaring the Bacons' loan in default. The only claim the Bacons make is that Countrywide and Bank of America "misrepresented" their authority to foreclose, and as a result, the Bacons have incurred "substantial damages." The Bacons refer to events that occurred in 2009, and do not refer to any contract term breached by Defendants.

The Note and Deed of Trust clearly designated that the Bacons were receiving a loan, that they had the obligation to repay, and they would be informed where to send their payments. The Bacons received the loan proceeds. Once the Bacons received the proceeds, they were required to make monthly payments. If they failed to do so, the Bacons agreed that the property could be sold in satisfaction of the debt. The Bacons were informed further that the Note, together with the Deed of Trust, could be sold and that such a sale may result in a change of their Loan Servicer, the entity that collected payments. The Bacons do not make any allegations concerning these events, only events concerning the foreclosure notice and impending sale. Absent identification of the

contract term allegedly breached, the Bacons have failed to state a claim for breach of the covenant of good faith and fair dealing.

Nor have the Bacons identified what damages they have suffered as a result of the alleged breach of the covenant of good faith and fair dealing. They do not allege that their loan payments were misapplied, or that they were misinformed about where to send their payments. Other than being subject to foreclosure and needing to find another home, the Court can discern no facts in the Complaint as to the Bacons' alleged damages. And foreclosure was an event that the Bacons should have expected under the express terms of the Note and Deed of Trust in the event they failed to make their monthly payments.

Accordingly, the Bacons have not plead facts establishing that Defendants violated, nullified, or significantly impaired their rights under the Note or Trust Deed, and have not alleged any damages caused as a result of any breach. Therefore, dismissal of their claim for breach of the covenant of good faith and fair dealing is appropriate.

**3.      Intentional or Negligent Misrepresentation**

The Bacons have alleged both intentional and negligent misrepresentation. However, except within the narrow confines of a professional relationship, the Idaho Supreme Court has rejected the tort of negligent misrepresentation, and expressly declined to adopt the Restatement standard for negligent misrepresentation. *Intermountain Const., Inc. v. City of Ammon*, 841 P.2d 1082, 1084 (Idaho 1992) (citing *Idaho Bank & Trust Co. v. First Bancorp of Idaho*, 772 P.2d 720, 722 (Idaho 1989)). The Bacons have not established that they had a relationship other than as a customer with their lender, Countrywide. Nor have the Bacons come forward with any facts suggesting

that there was more than a customer relationship with their subsequent loan servicer,

Bank of America. Therefore, the Bacon's claim for negligent misrepresentation should be

dismissed.

The elements for intentional misrepresentation, or fraud, are well established in

Idaho. A plaintiff must prove: (1) a representation; (2) its falsity; (3) its materiality; (4)

the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that

the representation should be acted upon by the hearer and in the manner reasonably

contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the

supposed truth of the representation; (8) his right to rely thereon; and (9) his consequent

and proximate injury. *G&M Farms v. Funk Irr. Co.*, 808 P.2d 851, 855 (Idaho 1991).

Damages are an essential component of a fraud claim, and a false representation which

cases no injury is not actionable. *Mason v. Tucker and Associates*, 871 P.2d 846, 852

(Idaho Ct. App. 1994).

Further, fraud claims are held to the heightened pleading standard of Fed. R. Civ.

P. 9(b), which requires particular averments regarding each defendant's participation in

the alleged fraudulent scheme. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1981).

Failure to plead allegations of fraud with the required factual specificity is a sufficient

ground for granting a motion to dismiss. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

1108 (9th Cir. 2003).

In support of their claim for misrepresentation, the Bacons allege that Bank of

America misrepresented the identity of the Note Holder and the Beneficiary of the Trust

Deed. The Bacons contend that Countrywide "falsely claimed that it had lent money to

Plaintiffs when it had not," and they had relied upon the fact that Countrywide was their Lender, because once their loan was sold or securitized, the Bacons lost their ability to negotiate with their Lender. The Bacons assert they have suffered unspecified damages.

The terms of the Note and Deed of Trust explicitly state that Countrywide was the Lender, but that the Note, or a partial interest in the Note, could later be sold after the Bacons received their loan money. Further, the Note and Deed of Trust indicated that a Loan Servicer would be collecting the payments due under the Note. The Note and Deed of Trust conferred no obligation upon Defendants to notify the Bacons to whom the Note was sold to, and required only that Defendants inform the Bacons about any change in their Loan Servicer so that they could continue to make their monthly payments. According to the express terms of the Note and Deed of Trust, the Bacons were informed of the very scheme they now complain of. Their awareness of the intricacies of the secondary mortgage market is immaterial.

The Court can discern no allegation indicating that the Bacons were misinformed about Countrywide's ability to sell its interest in the Note, or the possibility that their loan would be sold and tracked through the MERS system. Nor have the Bacons alleged that they relied upon any misrepresentation about Countrywide's ability to sell their Note in deciding to enter into their home loan, or that they would not have entered into their loan if they had more information about the mortgage backed securities market. Given the Bacons were informed the Note could be sold, and that a loan servicer would be collecting their payments, the Bacons have failed to plead the elements of fraud. That the Bacons were unable to later modify their loan, and were allegedly not told who the

current holder of the Note might be, has no bearing upon the statements expressed and disclosed to them at the time the Bacons signed the Note and Deed of Trust in 2007. Their Note and Deed of Trust contained no promise that Countrywide would renegotiate its terms if the Bacons could not make their payments. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011) ("Although the plaintiffs allege that they were "deprived of the right to attempt to modify their toxic loans, as the true identity of the actual beneficial owner was intentionally hidden" from them, they do not support this bare assertion with any explanation as to how the operation of the MERS system actually stymied their efforts to identify and contact the relevant party to modify their loans.").

Moreover, the Bacons have identified no monetary damages, or any damages at all, other than their current inability to modify their loan terms. However, the Bacons have not identified any term in the Note and Deed of Trust that confers an obligation upon Defendants to modify the terms of the Note and Deed of Trust upon an occurrence of default. The Bacons were informed, purely and simply, that if they failed to make payments, their property would be sold to satisfy the debt.

The Bacons have failed to plead the elements of fraud with particularity. Nor have the Bacons supplied any response in their brief to Defendants' arguments indicating that the Bacons have asserted insufficient facts entitling them to relief. Therefore, the motion to dismiss the misrepresentation claims should be granted.

## 4. The Idaho Consumer Protection Statutes

The Bacons allege that Defendants violated § 48-601 through § 48-619 of the Idaho Deceptive Trade Practices Act. Under these sections, recovery is permitted only for specific actions that are deemed to be unfair or deceptive. *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010); *See also* Idaho Code § 48-603(E). The Act enumerates nineteen prohibited practices. Idaho Code § 48-603(1)-(19).[2] To be actionable, a defendant's

---

[2] Those nineteen prohibited acts are as follows:
(1) Passing off goods or services as those of another;
(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
(4) Using deceptive representations or designations of geographic origin in connection with goods or services;
(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;
(6) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;
(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
(8) Disparaging the goods, services, or business of another by false or misleading representation of fact;
(9) Advertising goods or services with intent not to sell them as advertised;
(10) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;
(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
(12) Obtaining the signature of the buyer to a contract when it contains blank spaces to be filled in after it has been signed;
(13) Failing to deliver to the consumer at the time of the consumer's signature a legible copy of the contract or of any other document which the seller or lender has required or requested the buyer to sign, and which he has signed, during or after the contract negotiation;
(14) Making false or misleading statements of fact concerning the age, extent of use, or mileage of any goods;
(15) Promising or offering to pay, credit or allow to any buyer or lessee, any compensation or reward in consideration of his giving to the seller or lessor the names of prospective purchasers or lessees, or otherwise aiding the seller or lessor in making a sale or lease to another person, if the earning of the rebate, discount or other value is contingent upon the occurrence of an event subsequent to the time the buyer or lessee agrees to buy or lease;
(16) Representing that services, replacements or repairs are needed if they are not needed, or providing services, replacements or repairs that are not needed;
(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer;
(18) Engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C, Idaho Code, provided, however, that the provisions of this subsection shall not apply to a regulated lender as that term is defined in subsection (37) of section 28-41-301, Idaho Code;
(19) Taking advantage of a disaster or emergency declared by the governor under chapter 10, title 46, Idaho Code, or the president of the United States . . .

conduct must fall within one of the statute's nineteen subsections. *State v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 433-34 (Idaho 2005).

Other than their broad, sweeping allegations condemning the mortgage backed securities market, the Bacons have not identified what conduct attributable to any specific Defendants violated the Deceptive Trade Practices Act, let alone any specific provision such conduct violated. Nor have the Bacons supplied a response in their brief to elucidate their claim for relief under the consumer protection laws. Therefore, Defendants' motion to dismiss the consumer protection claims should be granted.

### 5.    Quiet Title

In Idaho, a quiet title "action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim." Idaho Code § 6-401. The "purpose of a quiet title action is to establish the security of title." *Roselle v. Heirs and Devisees of Grover*, 789 P.2d 526, 529 (Idaho Ct. App. 1990).

The record in this case does not reflect that any foreclosure sale has occurred in regard to the Property. And nothing in the record suggests that the Bacons are not still the Property's owners of record. However, fatal to the Bacons' quiet title claim is their failure to plead tender. "A mortgagor cannot without paying his debt quiet title as against the mortgagee." *Trusty v. Ray*, 249 P.2d 814, 817 (Idaho 1952). This is true even where the mortgagee has failed to pursue a foreclosure action within the applicable statute of limitations. *Id.*; *see also In re Mullen*, 402 B.R. 353, 358 (Bankr. D. Idaho 2008). The Bacons have not included an assertion in their complaint that they tendered payment of

their debt obligation. Without evidence or even an assertion that the Bacons can or are willing to tender payment on their loan, they cannot succeed on their quiet title action, as a matter of law. Having not alleged tender, Defendants' motion to dismiss the quiet title claim is properly granted. *See Gilbert v. Bank of America, N.A., et. al.*, Case No. 1:11-cv-00272-BLW.

Even assuming some yet unknown entity is the true Note Holder entitled to receive payments, the fact that the entity is unknown is not a cloud on the title. Rather, the security instrument itself is the cloud upon the Bacons' title. *See Power & Irrigation Co. of Clear Lake v. Capay Ditch Co*., 226 F. 634, 639 (9th Cir. 1915) (explaining that a deed, which operates as a mortgage, constitutes the cloud on title). Unless and until the Note Holder fails to produce clear title and a warranty deed upon tender, the Bacons may not fail to comply on their part with the provisions of the Note requiring payment. *See Rischar v. Shields Et. Ux*., 145 P. 294, 295 (Idaho 1914) (holding that purchasers of land could not refuse to tender payments on the grounds that the seller did not have clear title; purchasers had to tender purchase price, and could only maintain an action for damages if, at that time, seller could not produce clear title).

The tender rule has been applied in quiet title suits seeking equitable relief for almost 100 years. In *Power & Irrigation Co. of Clear Lake*, the Court of Appeals for the Ninth Circuit explained, in 1915, that regardless of possession by the grantee of the mortgage, the grantor of the mortgage could remove the cloud on the title upon "doing equity by redemption and payment of the mortgage debt, . . . and that he must do equity by payment of the balance of the debt, as a condition of removing the cloud," even if the

lien of the mortgage was extinguished. 226 F. at 639. The court explained that, even

though the right to enforce the mortgage by foreclosure had expired by limitation, the

plaintiff was required, in equity, to pay the mortgage debt to obtain relief under a quiet

title action. *Power & Irrigation Co. of Clear Lake*, 226 F. at 640—41. *See also Platts v.

Pac. First Fed. Sav. & Loan Ass'n of Tacoma*, 111 P.2d 1093, 1097 (Idaho 1941)

(Givens, J. concurring in part, dissenting in part) ("equity will not remove a cloud on the

title to real estate, occasioned by the owner's failure to pay a valid debt, while the debt

remains unpaid"); *Kelley v. Clark*, 129 P.921, 926 (Idaho 1913) (stating that "one who

asks equity must do equity" and, upon a showing that plaintiff owed the

debt, plaintiff was required to pay the amount due upon the mortgage foreclosure decree

before the court, in equity, would quiet title in the plaintiff.). The tender rule is still the

rule today, and absent the money necessary to pay the debt, a court of equity will not

quiet title against the mortgagee. *Saldate v. Wilshire Credit Corp*., 686 F.Supp.2d 1051,

1060 (E.D. Cal. 2010).

    The Bacons have not pleaded that they do not owe the debt. They acknowledge

they are in default. This pleading defect is fatal to their quiet title claim, yet the Bacons

never address the issue in their briefs. Instead, they argue that Defendants cannot

properly foreclose the trust deed because, among other arguments, the Bacons are entitled

to a determination of who owns the Note and Deed of Trust. The Court is not persuaded.

In a different factual setting, a request for such a determination might make sense. But

here, the Bacons have failed to allege tender. That precludes their quiet title action. The

fact that the Note may have been transferred does not somehow relieve the Bacons from

making payments. As this Court recently observed, "Plaintiff cannot establish a cloud on the title to the property just because Plaintiff has not been provided proof of which entity holds the original promissory note." *Meyer v. Bank of Am.*, Case No. 1:10-cv-632-EJL-REB, 2011 WL 4584762, at *3 (D. Idaho Sept. 30, 2011). As in *Meyer*, the Bacons are the undisputed fee owners of the property. The Bacons do not contest the Note or Trust Deed obligations. Thus, absent a tender allegation, the Bacons cannot succeed on their quiet title claim.[3]

Moreover, the Trust Deed expressly states that the Note or a partial interest in the Note "can be sold one or more times without prior notice to Borrower," but "[i]f there is a change in Loan Servicer, Borrower will be given written notice of the change" as required by consumer protection laws. By signing the Deed of Trust, the Bacons agreed they might find themselves in exactly the position they now complain of—unsure of who owns their Note, but with clear instructions as to where to send payments to the Loan Servicer. As the Ninth Circuit Bankruptcy Appellate Panel recently observed, the borrower (the maker of the note) "should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." *Veal v. Am. Home Mortgaging Serv., Inc.* (*In re Veal*), 450 B.R. 897, 912 (9th Cir. BAP 2011). Under these circumstances, the Court rejects the Bacons' quiet title claim. *Cf. Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011)

---

[3] The Bacons' attempt to distinguish *Meyer* in their supplemental brief, (Dkt. 24), is unpersuasive. Meyer made the exact claim the Bacons make in this case, that the securitization of their loan extinguished the defendants' equitable rights in the property. It is of no moment the semantics used, whether it be that the Note was split from the Deed or not. The Bacons still use the theory of quiet title in an attempt to thwart Defendants' assertion of the equitable right of sale.

(rejecting plaintiffs' argument that defendants had defrauded them as to MERS' role in the loan, and that MERS was used to hide ownership of the loan). *See also Washburn v. Bank of America, et. al.*, Case No. 1:11-cv-00193-EJL-CWD, Order (Jan. 17, 2012) (wherein the Court effectively rejected the use of a quiet title claim in a mortgage foreclosure context when the plaintiff conceded she could not tender the amounts due under her loan agreement).

Defendants' motion to dismiss the Bacons' claim for quiet title should be granted.

## 6.    Declaratory and Injunctive Relief

The Bacons contend that they are entitled to a declaratory judgment that Defendants lack an interest in the Trust Deed enforceable by lien upon, or sale of, the Property. Their arguments in support of this claim strike at the heart of their complaint, because they allege that none of the Defendants has the authority to initiate foreclosure proceedings. Although their allegations fail to satisfy the elements of their chosen causes of action as discussed above, the allegations do form the basis for their declaratory relief action.

The Bacons first contend Defendants lack authority to act under the Idaho Trust Deed Act. (Response at 12, Dkt. 13.) The Bacons essentially assert that Defendants, without authority to enforce the Note or Deed of Trust, lack standing to conduct a trustee's sale. Recently, the Idaho Supreme Court decided *Trotter v. Bank of New York Mellon*, No. 38022, 2012 WL 206004 (Idaho Jan. 25, 2012), and rejected such standing arguments. There, the plaintiff argued that, before a party may foreclose under the Idaho Deed of Trust Act, Idaho Code §§ 45-1502—1515 (the "Act"), it must establish its

standing to foreclose by proving it is the current owner of the mortgage, which comprises both the Note and Deed of Trust. The Idaho Supreme Court held that the foreclosure process under the Act is not a judicial proceeding, and therefore, no "standing" need be proven because the procedure to foreclose on trust deeds exists outside of the judicial process. *Trotter*, 2012 WL 206004 at *3. Thus, under whatever theory of standing a plaintiff utilizes to argue that its mortgagor, or MERS, lacks the authority to foreclose, *Trotter* holds that no "standing" need be shown. Rather, the court held that the trustee may foreclose by advertisement and sale, provided the trustee complies with the requirements contained within the Act. *Id.*

The Bacons have not explicitly plead how Defendants failed to comply with the Act. Rather, they conclusorily assert, with no supporting facts, that their mortgage, or more precisely, the Note, immediately was securitized and sold upon funding of the loan. (Compl. ¶¶24—27, 51.) Their argument rests upon the principle that the assignment of a debt secured by a mortgage carries with it the security. Idaho Code § 45-911. Therefore, since the assignment of the right to payment under the Note necessarily takes with it the equitable right of sale under the Deed of Trust, the Bacons claim that the unidentified investors who purchased their mortgage on the open market are the ones with the right to foreclose, and therefore Bank of America, MERS, and Countrywide cannot.

Generally, plaintiffs in this type of a suit allege that the defendant mortgagors, or MERS, as the case may be, lack authority to foreclose because the Note is irrevocably split from the Deed of Trust. The Bacons asserted as much in their Complaint. (Compl. ¶

32 Dkt. 1.)[4] But in a complete 180, the Bacons assert in their reply brief that the Defendants lack authority to initiate foreclosure proceedings because the security (the Deed of Trust) was <u>not</u> split from the Note when the Note was sold or assigned by Countrywide. (Pls.' Supp. Mem at 7—8, Dkt. 24.) The Bacons assert, therefore, that the holder of the Note upon sale became the entity with the power to enforce the Note under the Deed of Trust, thereby divesting MERS of those rights unless the subsequent note holder expressly granted to MERS that authority.[5]

The Bacons rely upon a recent decision from Oregon, *Hooker v. Northwest Trustee Serv., Inc.*, No. 10-3111-PA, 2011 WL 2119103 (D. Or. May 25, 2011), in which the court reviewed the "MIN summary," a printout from MERS detailing the transfers within the MERS system of the servicing and ownership rights of loans. In that case, GN Mortgage was the original lender identified in the trust deed, and GN Mortgage was owed payments under the note. However, the evidence before the court from the MIN summary indicated Guaranty Bank had obtained the beneficial interest in the trust deed, with no information as to how or when that occurred. Guaranty Bank then transferred its rights to Wells Fargo, which in turn transferred its rights to Bank of America. The only

---

[4] Paragraph 32 of the Complaint avers that "Plaintiffs' Trust Deeds and Notes were intentionally separated by assignment of the Trust Deeds without assignment of the Notes during the securitization process thus avoiding each respective holder's foreclosure interest."

[5] Split or not, the end result is the same. The Ninth Circuit in *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011) explained that the deed and note must be held together because the holder of the note does not have the right under the deed to use the property as a means of satisfying repayment. Conversely, the court explained, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment. *Id.* The "Split the Note" theory is premised upon separation of the Note and Deed once the Note is sold, with the Note Holder holding the Note, and MERS holding the beneficial interest in the Deed. The Bacons' theory, on the other hand, presumes the beneficial interest in the Deed is transferred automatically once the Note is sold, because the "deed always follows the note." Again, MERS would be divested of authority to sell the property under the Deed upon sale of the Note. The result of the Bacons' argument, which this Court rejects, is the same---that MERS has no authority to act.

recorded assignment of the trust deed was the assignment of the trust deed from MERS to Bank of America. The court denied defendants' motion to dismiss on the grounds that the assignments from Guaranty Bank, to Wells Fargo, and next to Bank of America, were not recorded as required by the Oregon Trust Deed Act, and entered a judgment declaring that the defendants lacked the ability to initiate a non-judicial foreclosure. *Hooker* at *9.

Idaho's trust deed recording statute is virtually identical to Oregon's trust deed recording statute. The Idaho Act permits the trustee to foreclose a trust deed if the "trust deed, and any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded… ." Idaho Code § 45-1505(1). However, *Hooker* is distinguishable on its facts. Other than the Bacons' naked assertion that their loan was sold or securitized based upon their general knowledge of the mortgage backed securities market, the Bacons have not described any facts in their Complaint to support their claim. The Bacons have not presented the Court with the MIN Summary related to their loan.

Moreover, it is unlikely the Bacons could present facts to support their claim. Defendants have presented documents that appear to comply with Idaho Code § 45-1505, and leave no gap similar to that evident in *Hooker*. The original Lender is Countrywide, identified as such in the Note and Deed of Trust. Countrywide appointed Fidelity as Trustee, and MERS as "nominee for *Lender and Lender's successors and assigns*." The Corporate Assignment filed on December 9, 2009, indicates that Bank of America is the

successor in interest for Countrywide.[6] MERS, given authority by Countrywide and Countrywide's successors to act on Countrywide's behalf, granted its beneficial interest in the Deed of Trust to Bank of America, together with the Note. Then, Bank of America appointed a successor trustee, Recontrust. All of the requisite documents were recorded in the proper order. These facts, all part of the public record, indicate no gap, contrary to the facts present in *Hooker*. Thus, the Bacons have not alleged any specific violation of the Idaho recording and foreclosure statutes related to the purported "split," or as the case may be, non-split, of the Note and Deed of Trust. *C.f. Russell v. OneWest Bank FSB*, No. 1:11–cv–00222–BLW, 2011 WL 5025236 (D. Idaho Oct. 20, 2011) (wherein the plaintiffs raised specific factual issues concerning the defendants failure to comply with Idaho's Trust Deed Act).

The above analysis leads the Court once again to the Ninth Circuit's holding in *Cervantes*. In *Cervantes*, the plaintiffs raised a "split the note" argument. The court rejected the plaintiffs' conclusion that, as a necessary consequence of the MERS system and the asserted irrevocable split of the note from the deed, no party has the power to foreclose. *Cervantes*, 656 F.3d at 1044. The court stated that the legality of MERS's role as a beneficiary could potentially be an issue if MERS initiated foreclosure in its own name, or if the plaintiffs alleged a violation of state recording and foreclosure statutes. *Id.* (citing *Hooker*, 2011 WL 2119103 at *4, and *Jackson v. MERS, Inc.*, 770 N.W.2nd 487 (Minn. 2009), which held contrary to *Hooker*). However, the court in *Cervantes* held that,

---

[6] In 2008, Bank of America purchased Countrywide Financial Corp. for $4 billion in an all-stock deal. *See* http://money.cnn.com/2008/01/11/news/companies/boa_countrywide/ last visited 02/08/2012.

because the trustee initiated foreclosure in the name of the lender and not in the name of MERS, neither circumstance was present. *Id.* The court held the lender would still be entitled to repayment of the loan and would be the proper party to initiate foreclosure upon default; provided the trustee acted as agent of the lender, the trustee could act on the lender's behalf. *Id.* Because the plaintiffs' allegations did not question whether the trustee was the agent of the lender, their claims failed. *Id.*

Thus, absent any specific factual allegation supporting the Bacons' naked assertion that the Idaho Act was violated, the same facts in *Cervantes* are present here. MERS assigned its interest in the Deed of Trust together with the Note under its authority to do so on behalf of the original Lender and its assigns. In this case, Countrywide's successor in interest was Bank of America. Upon MERS's assignment of the beneficial interest under the Deed of Trust and the Note, Bank of America appointed a successor trustee, Recontrust, to act as its agent. Recontrust initiated foreclosure proceedings on behalf of Bank of America by recording the Notice of Default. The Bacons raise no issue with the trustee's authority to act as an agent of Bank of America, the successor to Countrywide.

Absent specific allegations in the Complaint, the Bacons have not sufficiently alleged violations of the Idaho recording and foreclosure statutes related to the purported splitting, or lack of a split, of the note and deed. Their claim for declaratory relief should therefore be dismissed.

## CONCLUSION

Based upon the foregoing, the Court concludes that Defendants' motion to dismiss should be granted. The Court has further considered whether Plaintiffs should be granted leave to amend their Complaint. On the facts of the record, the Court determines they should not be given that opportunity. Plaintiffs were given the opportunity to respond to the holdings in *Meyer* and *Gilbert,* which specifically discussed the tender requirement upon a claim for quiet title, before the Court fully considered the briefing and other materials filed in support of an in objection to Defendants' motion to dismiss. Instead of squarely addressing the holdings of those cases, which held that a failure to plead tender defeats a claim for quiet title, the Bacons simply failed to address the issue. As to their other claims, while it may be possible to amend the Complaint, the main argument Plaintiffs assert for their actions is the Defendants' lack of standing. *Trotter* precludes their arguments. Thus, any amendment would be futile.

Moreover, this Court has previously held in *Washburn*, Case No. 1:11-cv-00193-EJL-CWD , that when a plaintiff is contesting the validity of a foreclosure sale that has not yet occurred, those arguments are properly raised in the context of a foreclosure action—not within the context of a quiet title or declaratory judgment action. And finally, in response to Defendants' motion to dismiss, Plaintiffs offered no additional support— legal, factual, or otherwise—as to how the securitization of their loan somehow satisfied the elements of their claims for breach of the covenant of good faith and fair dealing, fraud, or violation of the Idaho Consumer Protection statutes. Rather, Plaintiffs appeared

to have abandoned those claims by failing to respond to Defendants' arguments. Therefore, the Court recommends that no leave to amend be granted.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Defendants' Motion to Dismiss (Dkt. 6) be **GRANTED** without leave to amend.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 626(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **February 08, 2012**

Honorable Candy W. Dale
United States Magistrate Judge